1

Quarles & Brady Streich Lang LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

2

3

4   David T. Barton (#016848) dtb@quarles.com
Carrie M. Francis (#020453) cfrancis@quarles.com

5   Benjamin J. Naylor (#023968) bnaylor@quarles.com

6   Attorneys for Defendant

7   **IN THE UNITED STATES DISTRICT COURT**

8   **FOR THE DISTRICT OF ARIZONA**

9

10  Charles W. Gribben,                              CIV-04-02814 PHX FJM

11              Gribben,                             **DEFENDANT UNITED PARCEL
                                                     SERVICE'S MOTION FOR
12      vs.                                          SUMMARY JUDGMENT**

13  United Parcel Service, Inc.,                     (Assigned to the Hon. Frederick J.
                                                     Martone)
14              Defendant.

15          Defendant United Parcel Service moves this Court to dismiss Plaintiff Charles W.

16  Gribben's ("Gribben") claims of disability discrimination and retaliation brought under

17  the ADA and Title VII.  Gribben worked as a shifter driver at UPS, where he operated

18  both air conditioned and non-air conditioned trucks.  Sometime during his employment,

19  Gribben developed a heart condition that allegedly made him sensitive to hot weather.  He

20  then requested of UPS that he only drive air conditioned trucks.

21          UPS carefully evaluated Gribben's requests for this accommodation and

22  determined that his heart condition and resulting sensitivity to hot weather did not

23  measure up to the rigorous requirements of an ADA disability because it did not

24  substantially limit him in any major life activity.  Gribben's requests for an air

25  conditioned truck were therefore denied.  Gribben then refused to go to work until he was

26  given an air conditioned truck.  None were available.  As a result, he was discharged for

27  insubordination.  Gribben now sues for disability discrimination and retaliation based

28

1  upon these events.

2  **This Court should dismiss Gribben's disability discrimination claim for two**

3  **reasons**:

4  **1.**    Gribben is not disabled under the ADA – his heart condition and resulting

5         sensitivity to heat do not substantially limit him in a major life activity; and

6  **2.**    Even if Gribben is disabled, he is unable to perform the essential functions

7         of his job with or without the accommodation of an air conditioned truck.

8         Even with air conditioning, the temperatures inside these trucks greatly

9         exceed Gribben's 90-degree temperature restriction.

10  **This Court should also dismiss Gribben's retaliation claim because**:

11  **1.**    Gribben was discharged for gross insubordination because he refused to

12  work, not because he engaged in any protected activity;

13  **2.**    The supervisor who made the decision to discharge Gribben had no

14  knowledge of Gribben's protected activities until after the discharge was made; and

15  **3.**    Over 16 months passed between Gribben's Charge of Discrimination and

16  his eventual discharge from UPS.  There is no causal connection between the protected

17  activity and adverse employment action.

18      UPS's Motion is supported by the following Memorandum of Points and

19  Authorities, the corresponding Statement of Facts, and the Court's entire file, all of which

20  are incorporated herein by reference.

21  **MEMORANDUM OF POINTS AND AUTHORITIES**

22  **I.    FACTUAL BACKGROUND**

23      Gribben commenced employment with UPS in 1982.  DSOF ¶ 1.  Since 1998

24  Gribben has worked full time days as a shifter driver.  DSOF ¶ 1.  A shifter driver moves

25  large, long-haul tractor trailers from drop-off points to unloading points at UPS's

26  distribution center.  These trailers are moved using specially designed vehicles called

27  "shifters."  Hence, the job title "shifter driver."  As a shifter driver, Gribben was required

28  to operate shifter vehicles.  DSOF ¶ 2.  Brown tractor vehicles ("browns") are also used

-2-

1   for this work.  Generally, browns have air conditioning, while shifters not.  UPS assigns

2   vehicles on an availability basis.  Gribben was generally assigned to an air conditioned

3   "brown" vehicle but, due to business demands, UPS could not guarantee that he would

4   always have an air conditioned vehicle.

5          In the summer of 2000, Gribben suffered heart failure and was diagnosed with

6   dilated cardiomyopathy and paroxysmal arterial fibrillation.  DSOF ¶ 3.  Since then,

7   Gribben has complained that his condition prevents him from working in an environment

8   where the temperature is greater than 90 degrees Fahrenheit for longer than 20 minutes.[1]

9   DSOF ¶ 4, 10.  As a shifter driver, Gribben is required to work outdoors in temperatures

10  that sometimes exceed 110 degrees Fahrenheit for periods longer than 20 minutes.

11         Gribben made four separate requests that UPS provide him with an air conditioned

12  truck on the job.  Each request was objectively evaluated by an independent physician

13  who was not employed by UPS.  DSOF ¶¶ 13, 19.  These independent physicians

14  examined Gribben's medical condition using the information provided by Gribben's own

15  physician, included in UPS's standard Request for Medical Information form.  *Id*.  Based

16  upon the medical information received, UPS determined that Gribben was not "disabled"

17  under the ADA.  DSOF ¶ 15.  Therefore, Gribben's requests for accommodations were

18  denied.

19         On March 31, 2004, Gribben arrived for work at UPS, clocked in, but did not begin

20  his duties as a shifter driver.  DSOF ¶ 23.  Instead, Gribben demanded that UPS provide

21  him with an air conditioned truck or he would not commence work.  DSOF ¶ 23.  UPS

22  dispatch personnel tried to procure an air conditioned truck for Gribben but none were

23

24  [1]   Whether Gribben's heart condition is aggravated by heat is a disputed fact.  On
    July 31, 2002, Dr. Peter Vasquez examined Gribben and determined that there was "no
25  objective evidence that [Gribben's] heart condition decompensates under the physiologic
    demands of the heat."  DSOF ¶ 13.  Then on April 21, 2003, Dr. N.S. Prakash determined
26  that Gribben's condition was not exacerbated by high ambient temperatures and his
    condition would not restrict Gribben from engaging in the physical activity that is
27  required of a shifter driver.  DSOF ¶ 19.  However, the Court need not decide this issue to
28  resolve this case.

1   available.  DSOF ¶ 23.  Gribben refused to work without an air conditioned truck, and he

2   was discharged by UPS District Labor Relations Manager, Jerry Dalzell, for gross

3   insubordination.  DSOF ¶ 23.  When he learned that he had been discharged, Gribben

4   smiled and thanked Dalzell for discharging him, stating that this would "mean a lot more

5   money for him" and that this was "the best thing that could have happened to him."

6   DSOF ¶ 24.  Gribben utilized the union grievance process to challenge his discharge and

7   was ultimately reinstated with backpay.  Gribben has been back on the job as a shifter

8   driver, utilizing vehicles with and without air conditioning, since 2004.

9   ## II.   ARGUMENT AND LAW

10      Gribben claims that UPS discriminated against him on the basis of his alleged

11   disability, cardiomyopathy, by failing to provide him with a reasonable accommodation

12   and by discharging him because he was disabled.  Gribben further claims that UPS

13   discharged him in retaliation for filing a charge of discrimination with the EEOC.

14   Gribben cannot raise a genuine issue of material fact with respect to either his disability

15   claim or his retaliation claim, and UPS is therefore entitled to summary judgment on both

16   causes of action.

17      ### A.   Gribben Cannot State a Prima Facie Claim of Disability Discrimination Under the ADA.

18

19      To state a prima facie claim of disability discrimination under the ADA, Gribben

20   must demonstrate that (1) UPS is subject to the ADA; (2) Gribben is disabled within the

21   meaning of the ADA; (3) Gribben can perform the essential functions of his job with or

22   without reasonable accommodation; and (4) Gribben suffered an adverse employment

23   action because of his disability.  *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*,

24   534 U.S. 184, 193 (2002); 244 F.3d 675 (9th Cir. 2001).  UPS does not dispute that it is

25   subject to the ADA.  Gribben, however, cannot demonstrate that he is disabled within the

26   meaning of the ADA.  Moreover, Gribben has asked that UPS eliminate one of his

27   essential job functions as a reasonable accommodation.  The ADA does not require UPS

28   to do this.  Consequently, UPS is entitled to summary judgment on all of Gribben's ADA

1   discrimination claims.

2   ### 1.   Gribben is Not Disabled.

3   To show that he is disabled under the ADA, Gribben must demonstrate that he: (1)

4   has a physical or mental impairment that substantially limits one or more of his major life

5   activities; (2) has a record of such an impairment; or (3) is regarded as having such an

6   impairment.  42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g)(1-3); *Toyota*, 534 U.S. at 193.

7   Gribben cannot meet any of these tests.

8   ### a.   Gribben Is Not Substantially Limited In Working, a Major Life Activity.

9   Gribben alleges that he is substantially limited in the major life activity of

10  working.[2]  The ADA requires people who claim disability status to "'prove a disability by

11  offering evidence that the extent of the limitation [caused by their impairment] in terms of

12  their own experience. . . is substantial.'"  *Toyota*, 534 U.S. at 199, citing *Albertson's, Inc.*

13  *v. Kirkingburg*, 527 U.S. 555, 567 (1999).  Mere evidence of a medical diagnosis is

14  insufficient to prove disability status, and will not defeat a motion for summary judgment.

15  *Toyota*, 534 U.S. at 195, 199.

16  When referring to the major life activity of working, "substantially limited" means:

17

18      Significantly restricted in the ability to perform either a class
        of jobs or a broad range of jobs in various classes as compared
19      to the average person having comparable training, skills, and
        abilities.
20
    *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 523 (1999), quoting 29 C.F.R. §
21
    1630.2(j)(3)(i).
22
23  Several courts have found that heat sensitivity does not substantially limit a person

    in the ability to work.  In *Miller v. AT&T Network Systems*, 722 F. Supp. 633, 639 (Or.
24
    1989), the plaintiff was not able to perform the essential functions of his job in work
25
    environments where the temperature exceeded 90 degrees Fahrenheit – the exact same
26

27  _____

    [2] Gribben does not contend that he is substantially limited in any other major life activity.
28  He readily admits that he can stand, walk, talk, eat, etc.

1    restriction claimed here by Gribben.  *Miller*, 722 F.Supp. at 640.  The court found that

2    Miller's heat sensitivity was not an impairment that "substantially" limited his ability to

3    work since it did not restrict him with respect to a broad class of jobs.  *Id*. at 639.

4            Similarly, in *Keating v. Gaffney*, 182 F.Supp.2d 278, 285 (E.D.N.Y. 2001), the

5    plaintiff, a Highway Construction Engineering Aid at the Department of Public Works,

6    claimed that he was "substantially limited" under the ADA in performing the major life

7    activity of working because he was intolerant to heat and thus unable to cope with the

8    working conditions in the Highway Construction Division.  *Id*. at 245.  Keating's job

9    functions included working in the heat and sun and working with asphalt.  *Id*. at 281.

10   Keating further alleged that his heat intolerance restricted his ability to engage in a broad

11   range of jobs that are regularly performed year round outdoors or in unairconditioned

12   areas.  *Id*. at 285-86.  The court rejected Keating's claims, finding that his inability to

13   perform this narrow range of jobs did not "substantially limit" his ability to perform the

14   major life activity of working.  *Id*.  Moreover, Keating was able to perform other outdoor

15   work if allowed occasional breaks and shelter.  *Id*. at 285.  Because Keating was still able

16   to perform a broad range of jobs, even for his current employer, the court found that his

17   condition did not substantially limit his ability to work and thus he was not disabled under

18   the ADA.  *Id*. at 286.

19          According to Gribben, his condition only prevents him from working jobs in

20   excessive heat for sustained periods of time.  DSOF ¶ 4.  Furthermore, like the claimant in

21   *Keating*, Gribben admits that he is able to perform outdoor work in the summer heat if he

22   is able to take short breaks approximately every 20 minutes.  DSOF ¶ 6.  As such,

23   Gribben is only limited with respect to those jobs which require that he work outdoors, in

24   the heat of the day, continuously without breaks.  These finite restrictions support the

25   conclusion that Gribben is still able to perform a broad range of jobs, even jobs with UPS,

26   without restriction or accommodation.  An impairment, such as Gribben's, which

27   disqualifies him from only a narrow range of jobs, is not considered substantially limiting.

28   *Id*. at 285; *see also Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 723 (2d Cir. 1994);

1   *Muller v. Costello*, 187 F.3d 298, 313 (2d Cir. 1999); *Wernick v. Federal Reserve Bank,*

2   *91* F.3d 379, 383 (2d Cir. 1996).  Because Gribben is not substantially limited in the major

3   life activity of working, he is not "disabled" within the meaning of the ADA and UPS is

4   entitled to judgment as a matter of law on this claim.

5   **b.      Gribben Does Not Have a Record of Being Disabled.**

6   To show discrimination based upon a record of an impairment, Gribben must

7   demonstrate that at some point in the past he was classified or misclassified as having a

8   mental or physical impairment that substantially limits a major life activity.  *Sherrod v.*

9   *American Airlines, Inc.*, 132 F.3d 1112, 1120-1121 (5th Cir. 1998).  In addition to

10  demonstrating that Gribben has a record of disability, he must also prove that UPS was

11  aware of that record.  *Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 510 n.8 (7th Cir.

12  1998).  Records Gribben could point to include education, medical or employment

13  records.  29 C.F.R. pt. 1630.  However, "[t]he record must be the one that shows an

14  impairment that satisfies the ADA; a record reflecting a Gribben's classification as

15  disabled for other purposes or under other standards is not enough."  *Colwell v. Suffolk*

16  *County Police Dep't.*, 158 F.3d 635, 645 (2d Cir. 1998).

17  Gribben's medical records, to the extent they have been shared with UPS, do not

18  suggest a greater degree of limitation of major life activities than the impairment

19  described in his Complaint.  Gribben's claim based on a "record of disability" fails

20  because the "record" does not reflect a substantial limitation of his ability to work.  *See*

21  discussion *supra* Part I.A.1.a.  As such, Gribben's claim fails for the same reasons his

22  substantial impairment claim fails.  *See Keating*, 182 F.Supp.2d at 286 (finding claimant

23  had no record of disability for the same reasons he was found to have no actual disability).

24  **c.      UPS Did Not Regard Gribben as Disabled.**

25  There is no evidence to support the allegation that UPS regarded Gribben as

26  disabled.  "'A person is "regarded as" disabled within the meaning of the ADA if a

27  covered entity mistakenly believes that the person's actual, nonlimiting impairment

28  substantially limits one or more major life activities."  *Murphy*, *supra* at 521-22 (citations

1   omitted).  Gribben must allege that UPS regarded him as disabled within the meaning of

2   the ADA, e.g., substantially limited in one or more major life activities.  *Keating*, 182

3   F.Supp.2d at 286.

4           UPS has never regarded Gribben as disabled.  Indeed, UPS's refusal to recognize

5   his heart condition and heat sensitivity as a disability is the primary source of contention

6   between the parties.  Gribben has requested a reasonable accommodation from UPS on

7   four different occasions.  On each occasion, UPS denied the request because Gribben's

8   heart condition and heat sensitivity did not meet the ADA definition of a disability.

9   DSOF ¶ 20.

10          On these facts, it cannot be said that UPS regarded Gribben as disabled.  In

11  evaluating Gribben's request for an accommodation, UPS relied on its own independent

12  medical examination of Gribben, performed by Dr. N.S. Prakash, who found that Gribben

13  has no restrictions stemming from his underlying cardiomyopathy.  DSOF ¶ 19.  Dr.

14  Prakash further opined that Gribben's decreased effort tolerance is directly attributable to

15  his obesity and inactive lifestyle more than his underlying cardiac function.  *Id.*  Finally,

16  Dr. Prakash found that Gribben's condition would not restrict him from performing his

17  job as a shifter driver, and approved Gribben to return to work with UPS as a shifter driver

18  without restriction.[3]

19          Based on both Dr. Prakash's assessment, and that of the OHS, UPS denied

20  Gribben's request for an accommodation, as it determined that Gribben was not disabled

21  within the meaning of the ADA.  UPS did not deny Gribben's request for an

22  accommodation based on discriminatory animus, but rather because the medical evidence

23  provided did not demonstrate that Gribben was disabled within the meaning of the ADA.

24

25  ---
    [3]    Note that Dr. Peter Vasquez also performed an independent medical examination
26  of Gribben.  In his report, Dr. Vasquez indicated that there was no objective evidence that
    Gribben's heart condition decompensates under the physiologic demands of heat.  DSOF
27  ¶ 13.  Furthermore, Dr. Vasquez noted that it was possible that the symptoms Gribben
    describes are due to a combination of his weight gain and his general physical
28  deconditioning.  *Id.*

1    Because Gribben cannot show that he was substantially limited in his ability to

2  perform one or more major life activities, that he had a record of being substantially

3  limited in his ability to perform one or more major life activities, or that UPS regarded

4  him as substantially limited in his ability to perform one or more major life activities, he

5  cannot state a prima facie case of disability discrimination and UPS is entitled to summary

6  judgment on Gribben's disability claim.

7                                  **2.      Gribben Is Unable or Unwilling To Perform the Essential
                                            Functions of His Job With or Without Reasonable
8                                           Accommodation.**

9    Even if Gribben were "disabled" within the meaning of the ADA, he is unable or

10  unwilling to perform the essential functions of his job with or without a reasonable

11  accommodation and thus cannot establish a prima facie case of disability discrimination.

12  To prove a prima facie case of discrimination under the ADA, Gribben must demonstrate

13  that he is a "qualified individual with a disability," meaning a person with a disability

14  who, with or without reasonable accommodation, can perform the essential functions of

15  Gribben's job as a UPS shifter driver.  42 U.S.C. § 12111(8).

16    Gribben cannot perform the essential functions of a UPS shifter driver.  The

17  essential functions of a shifter driver require that Gribben work in an environment with

18  variable temperatures and humidity (climate conditions), and tolerate exposure to outside

19  inclement weather.  DSOF ¶ 7.  Dr. Peter Vasquez determined through scientific

20  observation that shifter drivers spend less than one-half of their time inside of their

21  vehicles.  DSOF ¶ 14.  Thus, even if Gribben is operating a truck that is equipped with air

22  conditioning, he will only be exposed to air conditioning for, at most, a small portion of

23  his shift.  Gribben cannot be guaranteed a work environment with a temperature of 90

24  degrees Fahrenheit or less – at least not in Phoenix, Arizona.  DSOF ¶ 14.

25    Even if Gribben was provided with an air conditioned truck, the temperature inside

26  the truck would not drop down to the temperature required by Gribben's physician.  In his

27  report, Dr. Vasquez determined that during the summer months in Phoenix the

28  temperature in air conditioned trucks exceeds 110 degrees during the warmest times of the

1    day.  DSOF ¶ 14.  Furthermore, the temperature inside the cabs does not drop below 90

2    degrees, despite air conditioning, until after 11:00 pm.  DSOF ¶ 14.  Thus, even if Gribben

3    drove an air conditioned truck, the temperature inside the cab would greatly exceed the

4    maximum temperature Gribben could be exposed to, for the majority of the working day.

5         Furthermore, even if Gribben had an air conditioned truck, UPS cannot guarantee

6    that he would be able to sit in the cab and recover from the heat for the period of time

7    required by his physician.  In his deposition, Gribben's physician, Karl Moon, M.D.,

8    stated that for the air conditioning to have its desired effect upon Gribben, he would have

9    to be exposed to the air conditioning for five to ten minutes, for every 20 minutes he

10   spends in the heat.  DSOF ¶ 30.  Shifter drivers are constantly getting in and out of their

11   vehicles to couple and uncouple the tractor-trailers they move.  Thus, drivers may have to

12   spend far more than 20 minutes outside the cabs of their trucks and they may not have five

13   to ten minutes inside their trucks between moves.  DSOF ¶ 30.  Thus, even with an air

14   conditioning accommodation, Gribben would not be able to perform the essential

15   functions of a shifter driver.

16      It is undisputed that the position of shifter driver at UPS includes frequent exposure

17   to extreme heat, regardless of whether the driver's truck is equipped with air conditioning.

18   Gribben's restrictions make it impossible for him to perform the essential functions of this

19   job with or without the accommodation of an air conditioned cab.  Therefore, Gribben is

20   not a qualified individual with a disability, and cannot establish a *prima facie* case of

21   discrimination.

22           **B.     <u>Gribben Cannot State a Prima Facie Case of Retaliation.</u>**

23      Gribben alleges that UPS retaliated against him for filing a Charge of

24   Discrimination with the EEOC.  To establish a prima facie case of retaliation under Title

25   VII, Gribben must establish that (1) he engaged in a protected activity; (2) he suffered an

26   adverse employment action; and (3) a causal link exists between the protected activity and

27   the employment decision.  *Kortan v. California Youth Auth.*, 217 F.3d 1104, 1112 (9th

28   Cir. 2000).  In other words, Gribben must present "evidence adequate to create an

1  inference that an employment decision was *based on* an illegal discriminatory criterion."

2  *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312, (1996) (emphasis

3  modified).  Here, Gribben was discharged for gross insubordination – UPS's decision was

4  not motivated by any retaliatory animus.  DSOF ¶ 25.  Gribben cannot prove that a causal

5  link exists between his Charge with the EEOC and his subsequent discharge.  Thus,

6  Gribben is unable to set forth a prima facie case of retaliation under Title VII, 42 U.S.C. §

7  2000-e(3), and UPS is entitled to summary judgment.

8      UPS did not discharge Gribben in retaliation, but rather for gross insubordination

9  after he refused to perform his duties as a shifter driver.  On March 31, 2004, Gribben

10  refused to begin work until he was given a truck with air conditioning.  DSOF ¶ 23.  UPS

11  tried to accommodate Gribben's demand by procuring an air conditioned truck for him,

12  but there were no such trucks available.  DSOF ¶ 23.  Gribben was instructed to operate a

13  truck without air conditioning and he refused.  Jerry Dalzell discharged Gribben for this

14  reason alone.  DSOF ¶ 25.

15      Because he was discharged for insubordination, Gribben does not have a claim for

16  retaliation under Title VII.  Insubordination and refusal to follow orders do not qualify as

17  "protected activities" for purposes of a Title VII retaliation claim.  *Hottenroth v. Village of*

18  *Slinger*, 388 F.3d 1015, 1031-32 (7th Cir. 2004); *see also Love v. City of Chi. Bd. of*

19  *Educ.*, 241 F.3d 564, 570 (7th Cir. 2001) ("…an employee's insubordination toward

20  supervisors and coworkers, even when engaged in protected activity is justification for

21  [adverse employment action]") (quoting *Kahn v. United States Sec'y of Labor*, 64 F.3d

22  271, 279 (7th Cir. 1995)).  Thus, Gribben's claim fails to satisfy the first element of a

23  prima facie cause of action for retaliation, and UPS is entitled to summary judgment on

24  Gribben's retaliation claim.

25      Next, there is no sufficient causal link between Gribben's protected activity and the

26  adverse employment action about which he complains.  Gribben filed his original Charge

27  with the EEOC on November 15, 2002.  DSOF ¶ 18.  Gribben was not discharged from

28  UPS until March 31, 2004.  In *Clark County School District v. Breeden*, 532 U.S. 268,

1    273-74 (2001), the Supreme Court held that, to establish a prima facie case of retaliation,

2    the temporal proximity between the employer's knowledge of protected activity and an

3    adverse employment action must be "very close."  *Id*. citing to *O'Neal v. Ferguson*

4    *Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *see also Richmond v. Oneok, Inc.*, 120

5    F.3d 205, 209 (10th Cir. 1997) (finding a 3-month period to be insufficient); *Hughes v.*

6    *Derwinski*, 967 F.2d 1168, 1174-1175 (7th Cir. 1992) (finding a 4-month period to be

7    insufficient).

8          Here, over 16 months passed between Gribben's original discrimination Charge

9    and his discharge from UPS.  DSOF ¶ ¶ 18, 23.  This extended period greatly exceeds

10   *Breeden's* "very close" temporal proximity requirement.  Furthermore, Jerry Dalzell, the

11   UPS District Labor Relations Manager who made the decision to discharge Gribben, was

12   unaware of Gribben's prior Charge of discrimination when he fired Gribben.  DSOF ¶ 26.

13   Because Dalzell had no knowledge of Gribben's 15 November 2002 Charge against UPS

14   until after he discharged Gribben, he could not have possibly acted with a retaliatory

15   motive.  Without evidence of a causal connection between Gribben's protected activity

16   and the adverse employment action about which he complains, Gribben's retaliation claim

17   necessarily fails.

18   **III.    CONCLUSION**

19         Gribben has failed to raise a genuine issue of material fact with respect to either his

20   disability discrimination claim or his retaliation claim.  Gribben is not disabled under the

21   ADA.  Mere sensitivity to hot weather does not substantially limit him in any major life

22   activity.  But even if Gribben is disabled, he is unable to perform the essential functions of

23   a shifter driver with or without an accommodation.  Even with air conditioning,

24   temperatures inside the shifter trucks exceed Gribben's 90 degree temperature restriction.

25   Thus, Gribben's disability discrimination claim necessarily fails.

26         Gribben is also unable to establish a claim for retaliation.  Gribben was discharged

27   for gross insubordination because he refused to work, not because he engaged in any

28   protected activity.  Also, there is no causal connection between Gribben's protected

1   activity and his discharge from UPS, since more than 16 months passed between his

2   Charge of Discrimination and his discharge.  Finally, the supervisor who decided to

3   discharge Gribben had no knowledge of Gribben's protected activity until after the

4   discharge was made.  Thus, Gribben's retaliation fails.  UPS is entitled to summary

5   judgment on all of Gribben's claims.

6            RESPECTFULLY SUBMITTED this 18th day of November, 2005.

7                                          QUARLES & BRADY STREICH LANG LLP
                                           Renaissance One
8                                          Two North Central Avenue
                                           Phoenix, AZ  85004-2391
9
                                           By  s/ Benjamin J. Naylor
10                                              David T. Barton
                                                Carrie M. Francis
11                                              Benjamin J. Naylor

12                                         Attorneys for Defendant

13

14   I hereby certify that on the 18th day of
     November, 2005, I electronically
15   transmitted the attached document to the
     Clerk's Office using the CM/ECF System
16   for filing and transmittal of a Notice of
     Electronic Filing to the following
17   CM/ECF registrants:

18
     Susan Martin
19   Daniel L. Bonnett
     Jennifer Kroll
20   MARTIN & BONNETT
     3300 N. Central, Suite 1720
21   Phoenix, AZ 85012-2517
     Attorneys for Gribben
22
23   s/ Benjamin J. Naylor

24

25

26

27

28