**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles W. Gribben, | No. 04-CV-2814-PHX-FJM |
| Plaintiff, | **ORDER** |
| vs. | |
| United Parcel Service, Inc., | |
| Defendant. | |

**I**

Plaintiff Charles Gribben ("Gribben") is employed by defendant United Parcel Service, Inc. ("UPS") as a shifter driver. Shifter drivers use vehicles to transfer trailers among various sites. Some vehicles are air conditioned while others are not. According to UPS, Gribben was generally assigned to an air conditioned vehicle, but that could not be guaranteed.

In June 2000, Gribben was diagnosed with cardiomyopathy by his doctor, Dr. Karl Moon. Gribben testified that due to his condition, he became light-headed, had difficulty concentrating, difficulty breathing, and had chest pain when undertaking activities in extreme heat for extended periods of time, and had similar symptoms when lifting weight over 50 pounds. Accordingly, Gribben requested that UPS accommodate him pursuant to the

Americans with Disabilities Act ("ADA") by ensuring him a vehicle with air conditioning. UPS denied his request citing insufficient medical information.

Between June 2002 and June 2003, it appears that Gribben was suspended from UPS for medical reasons, but neither party sets forth a clear explanation of the circumstances of the suspension. During that period, Gribben renewed his request for reasonable accommodation, and supported it with a letter from Dr. Moon explaining his condition. Gribben subsequently visited two doctors at the request of UPS, Dr. Peter Vasquez and Dr. N. S. Prakash. Neither doctor's report suggests a need for accommodation, although Dr. Vasquez's report recommends further testing. Pursuant to Dr. Prakash's report, UPS permitted Gribben to return to work "without restrictions"; that is, UPS again denied Gribben's request for accommodation.[1] DSOF, Ex. M. In November 2002, Gribben filed a charge alleging ADA violations with the Equal Employment Opportunity Commission ("EEOC").

Although UPS denied Gribben's request for accommodation, UPS nonetheless provided Gribben with an air conditioned vehicle for every workday from June 2003 until March 31, 2004. On March 17, 2004, the EEOC issued a determination on Gribben's charge, finding reasonable cause to believe that UPS violated the ADA. Gribben submits evidence to show that at least two UPS managers were aware of the determination by March 31, 2004. That day, UPS dispatching personnel alerted Gribben that no air conditioned vehicles were available. Gribben submits evidence to show that one air conditioned vehicle was, however, available. Gribben refused to work without an air conditioned vehicle and was thereafter

---

[1] Gribben moves to strike on hearsay grounds the doctors' reports and UPS letters denying Gribben's requests for accommodation. Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). The evidence is relevant here to show the reasons that UPS claimed for denying Gribben's request for accommodation. The truth of the matters asserted is irrelevant. Accordingly, we deny Gribben's motion to strike this evidence (doc. 72).

1  discharged. UPS contends that Gribben was discharged for gross subordination; Gribben
2  contends that he was discharged in retaliation for filing the EEOC charge.
3      Gribben then filed a second charge with the EEOC alleging discrimination and
4  retaliation, and filed a grievance with UPS. Within a month, Gribben was permitted to return
5  to his job. Thereafter, the EEOC issued a determination finding reasonable cause to believe
6  that UPS retaliated against Gribben by terminating his employment.
7      Gribben then filed this action, claiming that UPS violated the ADA by discriminating
8  and retaliating against him. The court has before it UPS's motion for summary judgment
9  (doc. 60), Gribben's opposition (doc. 70), and UPS's reply (doc. 85); Gribben's motions to
10 strike (docs. 72, 79), UPS's response (doc. 81), and Gribben's reply (doc. 86); UPS's motion
11 to strike (doc. 85); and a joint motion for an extension of time (doc. 82).

## II

The ADA prohibits a "covered entity" from discriminating "against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a). UPS moves for summary judgment on Gribben's discrimination claim, contending that he does not have a "disability," nor is he a "qualified individual." We conclude that Gribben does not have a "disability" and therefore we need not consider whether he is a "qualified individual."

A person has a "disability" as defined by the ADA if he "(A) [has] a physical or mental impairment that substantially limits one or more of [his] major life activities . . . ; (B) [has] a record of such an impairment; or (C) [is] regarded as having such an impairment." 42 U.S.C. § 12102(2).

### A

Gribben contends that his impairment,[2] cardiomyopathy, substantially limits his major life activities of "walking at more than a slow pace or on an incline, running, climbing,

---

[2] Although there is no dispute that cardiomyopathy is an impairment, "[m]erely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment [substantially] limits a major life activity." Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195, 122 S. Ct. 681, 690 (2002).

pulling, pushing, squatting, bending, lifting, breathing, exposure to temperature extremes, physical exertion, and participation in outdoor activities."[3] Response at 7. In support of this contention, Gribben testified that he cannot walk outdoors, ride his bike, or play golf during the summer and that he cannot do minor yard work for more than 20 to 30 minutes in temperatures over 90 degrees because those activities cause him to have difficulty breathing and concentrating, chest pain, and light-headedness. PSOF, Ex. A at 7-17; Declaration of Charles Gribben ¶ 3. Gribben's symptoms are confirmed by Dr. Moon, PSOF, Ex. D at 10, and his former spouse, Donna Gribben, PSOF, Ex. K at 7-8.[4]

UPS contends that Gribben's impairment does not "substantially limit" him from participating in those activities, and therefore, he does not have a "disability." A plaintiff's impairment substantially limits a major life activity if he is "[u]nable to perform a major life activity" or "[s]ignificantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity" as compared to an average person in the general population. Toyota Motor Mfg. v. Williams, 534 U.S. 184, 195-96, 122 S. Ct. 681, 690 (2002) (quoting 29 C.F.R. § 1630.2(j)).[5] Accordingly, unless the impairment is substantially limiting "on its face," a plaintiff must submit evidence of the comparative abilities of an average person in the general population. Lusk v. Ryder Integrated Logistics, 238 F.3d 1237, 1240-41 (10th Cir. 2001). Gribben's condition is not substantially limiting on its face. Like him, many in the Phoenix area have physical reactions to the summer heat,

---

[3] UPS does not dispute whether these are major life activities, and therefore we assume, without deciding, that they are.

[4] Gribben contends that his limitation in various major life activities is "verified by [his] former spouse, Donna Gribben." Response at 7. Donna Gribben testified that when cleaning up after his dogs, Gribben can be outside for "maybe five to seven minutes" but "never more than ten minutes." PSOF, Ex. K at 8.

[5] "The Supreme Court has not decided whether the EEOC regulations are reasonable or are entitled to deference, although in several cases it has assumed that they are." EEOC v. United Parcel Serv., Inc., 306 F.3d 794, 801 n.4 (9th Cir. 2002) (citing Toyota Motor Mfg., 534 U.S. at 194, 122 S. Ct. at 689-90) (both cases relying on the EEOC regulations). Here, both parties rely on the EEOC regulations, and therefore so do we.

- 4 -

1  are "prisoner[s] in the summer to air conditioning," PSOF, Ex. A at 13, and therefore avoid
2  walking, riding their bikes, golfing, and doing yard work in the summer.
3    Gribben, however, failed to submit any evidence as to the abilities of an average
4  person in the general population to participate in outdoor activities in the Phoenix summer.
5  It is undoubtedly true that most people have a greater tolerance to heat than Gribben.
6  However, "substantially" "need[s] to be interpreted strictly to create a demanding standard
7  for qualifying as disabled," Toyota Motor Mfg., 534 U.S. at 197, 122 S. Ct. at 691, and
8  without comparative evidence, we have no means by which to conclude that Gribben's
9  intolerance is substantial, as opposed to merely moderate. Therefore, Gribben failed to show
10 that his impairment substantially limited any of these major life activities.[6]
11   Gribben also contends that his cardiomyopathy substantially limits him from the major
12 life activity of working.  "To be substantially limited in 'working,' an individual must be
13 significantly restricted in the ability to perform either a class of jobs or a broad range of jobs
14 in various classes as compared to the average person having comparable training, skills and
15 abilities." Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 794-95 (9th Cir. 2001)
16 (citing 29 C.F.R. § 1630.2(j)(3)(i)).  A "class of jobs" means "jobs utilizing similar training,
17 knowledge, skills or abilities, within [the plaintiff's] geographical area."  29 C.F.R. §
18 1630.2(j)(3)(ii)(B).  A "broad range of jobs in various classes" means "jobs not utilizing
19 similar training, knowledge, skills or abilities, within [the plaintiff's] geographical area." 29
20 C.F.R § 1630.2(j)(3)(ii)(C).  Accordingly, "[i]f jobs utilizing an individual's skills (but
21 perhaps not his or her unique talents) are available, one is not precluded from a substantial
22 class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded
23 from a broad range of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 492, 119 S. Ct.

---

[6] Even if Gribben had submitted compelling evidence with regard to the comparative heat tolerance of the general population, we would have nonetheless hesitated before concluding that Gribben's cardiomyopathy substantially limits his major life activities. All of the doctors that examined Gribben attributed his symptoms in part to weight gain, PSOF, Ex. D at 11-12, DSOF, Ex. G at 5, DSOF, Ex. L at 3, and therefore not all of Gribben's limitations can be attributed to his cardiomyopathy.

- 5 -

2139, 2151 (1999). Therefore, to defeat a motion for summary judgment, a plaintiff must "present specific evidence about relevant labor markets." Thornton, 261 F.3d at 795.

Gribben sets forth a vocational evaluation which states that in the Phoenix metropolitan area, out of the 1,610,930 jobs in which people are employed in all industries, Gribben is disqualified from the 251,520 jobs that "require work outdoors, heavy lifting, and/or exposure to very hot temperatures." PSOF, Ex. H at 6. The evaluation states that Gribben is therefore disqualified from a "broad range of occupations in our total workforce." Id. The evaluation is however silent as to the availability of indoor jobs that do not require heavy lifting for which Gribben is qualified. Without evidence that alternative jobs matching Gribben's skill set are unavailable, we cannot conclude that Gribben is substantially limited from the major life activity of working.[7]

**B**

A person also has a "disability" if he has a record of a physical or mental impairment that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2). The ADA therefore covers people who have a history of disability, or who were misclassified as disabled, "but who remain vulnerable to the fears and stereotypes of their employers." Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 509 (7th Cir. 1998). Gribben presents no evidence of a previous condition or misclassification; all of Gribben's evidence relates to his current impairment. Because Gribben does not show that his impairment substantially limits one or more of his major life activities, the same evidence cannot show that he has a record of an impairment that substantially limits one or more of his major life activities.

**C**

A person is also considered to have a "disability" if he is "regarded" as having an impairment that substantially limits one or more of his major life activities. 42 U.S.C. § 12102(2). This occurs where an employer "mistakenly believes that a person has a physical

---

[7] We assume, without deciding, that working is a major life activity. See Toyota Motor Mfg., 534 U.S. at 200, 122 S. Ct. at 692.

- 6 -

1 impairment that substantially limits one or more major life activities," or an employer
2 "mistakenly believes that an actual, nonlimiting impairment substantially limits one or more
3 major life activities." Sutton, 527 U.S. at 489, 119 S. Ct. at 2149-50. In both cases, "it is
4 necessary that [an employer] entertain misperceptions about the individual." Id. Where an
5 employee claims that his employer regarded his impairment as substantially limiting him
6 from the major life activity of working, he must show that the employer regarded him as
7 significantly restricted from being able to perform either a class or a broad range of jobs. See
8 Murphy v. United Parcel Service, Inc., 527 U.S. 516, 524, 119 S. Ct. 2133, 2138-39 (1999).

9 Gribben appears to contend that UPS regarded his impairment as substantially limiting
10 him from working. Specifically, Gribben contends that UPS must have regarded him as
11 disabled because it did not permit him to work during his "unpaid medical leave of absence"
12 from June 2002 to June 2003, and because during that period it required him to be examined
13 by two doctors. Response at 3, 9-10. Gribben however fails to show that UPS regarded him
14 as disabled.

15 Gribben submitted no evidence to show the reason for his leave of absence. All of the
16 evidence shows that UPS steadfastly denied that Gribben is disabled. UPS required Gribben
17 to undergo physical examinations because he claimed to be disabled, and because UPS
18 disagreed, not because UPS believed that he was disabled. However, even if UPS believed
19 that Gribben was unable to perform his job, Gribben failed to submit any evidence to show
20 that UPS believed that Gribben was significantly restricted in his ability to perform either a
21 class or broad range of jobs.

22 Gribben failed to submit sufficient evidence to show that he has a "disability."
23 Accordingly, we grant summary judgment for UPS on Gribben's discrimination claim (doc.
24 60).

25 **III**

26 Gribben also claims that he was discharged in retaliation for filing his charge with the
27 EEOC in November 2002. It is a violation of the ADA to "discriminate against any
28 individual because such individual has opposed any act or practice made unlawful by [the

1  ADA] or because such individual made a charge, testified, assisted or participated in any
2  manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a).
3  "To establish a prima facie case of retaliation under the ADA, an employee must show that:
4  (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and
5  (3) there was a causal link between the two. Pardi v. Kaiser Found. Hosps., 389 F.3d 840,
6  849 (9th Cir. 2004) (citation omitted).  "If the employee establishes a prima facie case, the
7  employee will avoid summary judgment unless the employer offers legitimate reasons for the
8  adverse employment action, whereupon the burden shifts back to the employee to
9  demonstrate a triable issue of fact as to whether such reasons are pretextual." Id. (citation
10 omitted).

11        Gribben engaged in protected activity when he filed a charge with the EEOC.
12 Gribben suffered adverse employment actions when 1) UPS did not provide him with an air
13 conditioned vehicle, although it had provided him with one for the previous 8 months, and
14 when 2) he was discharged.  Adverse employment action is broadly defined as any action
15 "reasonably likely to deter employees from engaging in protected activity." Id. at 850
16 (quoting Ray v. Henderson, 217 F.3d 1234, 1243 (9th Cir. 2000)).  Both of these acts are
17 reasonably likely to deter employees from engaging in protected activity.

18        There is evidence to support a causal link between the filing of the charge and the
19 adverse employment actions.  A causal link can be inferred when "adverse employment
20 decisions closely follow complaints of discrimination." Id.  However, "[w]hen temporal
21 proximity between protected activity and allegedly retaliatory conduct is missing, courts may
22 look to the intervening period for other evidence of retaliatory animus." Krouse v. American
23 Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir. 1997).  There is no temporal proximity between
24 the filing of the charge and the adverse employment actions; approximately 16 months had
25 passed.  However, UPS was confronted with Gribben's requests for accommodation many
26 times during that period. More importantly, Gribben was discharged shortly after at least two
27 managers at UPS learned that the EEOC issued its determination.  PSOF, Ex. C at 76-77;
28

Declaration of Rocco J. Arcadi ¶ 5.[8] Taken together, this is sufficient evidence from which a jury could reasonably conclude that the animus that may have dissipated over the intervening 16 months surfaced again near the time of the adverse employment actions. Therefore, Gribben set forth a prima facie case of retaliation.

UPS, however, offers legitimate reasons for the adverse employment actions: no air conditioned vehicles were available, and Gribben committed gross insubordination by refusing to work. The burden therefore shifts back to Gribben to show that these reasons are pretextual.

It is undisputed that for approximately 8 months, an air conditioned vehicle had been available to Gribben. In contrast to UPS's contention, Gribben submits evidence that an air conditioned vehicle was available on the date he was discharged. PSOF, Ex. E at 33-35. Moreover, at least one manager expressed resentment over the EEOC's determination at the meeting during which Gribben was discharged. Declaration of Rocco J. Arcadi ¶ 5 (Steve Stevens stated that the EEOC "do[es] not tell us what to do."). This is sufficient evidence from which a jury could reasonably conclude that UPS's reasons for the adverse employment actions were pretextual.[9] Accordingly, we deny UPS's motion for summary judgment on Gribben's retaliation claim (doc. 60).

---

[8] UPS submits evidence to show that Jerry Dalzell made the decision to discharge Gribben, and that he had no knowledge that Gribben filed a charge with the EEOC. At all events, Gribben submitted evidence from which a jury could reasonably conclude that the person or persons responsible for discharging Gribben were aware of the EEOC charge and determination.

[9] Engaging in protected activity does not immunize an employee from discharge for insubordination unrelated to the protected activity. See Newland v. Dalton, 81 F.3d 904, 906 (9th Cir. 1996); Hottenroth v. Village of Slinger, 388 F.3d 1015, 1031-32 (7th Cir. 2004). Here, however, the first alleged retaliatory act–denying Gribben an air conditioned vehicle–led to Gribben's insubordination, and ultimately to his discharge, the second alleged retaliatory act. Therefore, although Gribben was ostensibly discharged for insubordination, a jury could reasonably conclude that he was actually discharged in retaliation for filing a charge with the EEOC.

- 9 -

**IV**

Gribben and UPS move to strike various evidentiary materials for lack of clarity, misstatements of facts, and violations of the Federal Rules of Evidence (docs. 72, 79, 85). We already considered the objections to evidentiary materials which were relevant to the conclusions reached herein. We deny as moot all other motions to strike (docs. 72, 79, 85).

**V**

The parties jointly move to extend to January 27, 2006 the deadlines for UPS to reply in support of its motion for summary judgment, for Gribben to respond to UPS's motion to strike, and for Gribben to reply in support of his motion to strike. We grant the parties' motion to extend the deadlines nunc pro tunc (doc. 82).

**VI**

**IT IS ORDERED GRANTING** UPS's motion for summary judgment with regard to Gribben's discrimination claim, and **DENYING** UPS's motion for summary judgment with regard to Gribben's retaliation claim (doc. 60).

**IF IS FURTHER ORDERED DENYING** all motions to strike (docs. 72, 79, 85).

**IT IS FURTHER ORDERED GRANTING** the parties' joint motion for extensions of time (doc. 82).

DATED this 8th day of March, 2006.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge