Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391
TELEPHONE 602.229.5200

David T. Barton (#16848) dtb@quarles.com
Carrie M. Francis (#20453) cfrancis@quarles.com
Benjamin J. Naylor (#23968) bnaylor@quarles.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| Charles W. Gribben, | CIV-04-02814 PHX FJM |
|---|---|
| Plaintiff, | **DEFENDANT UNITED PARCEL SERVICE'S SECOND MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| United Parcel Service, Inc., | (Honorable Frederick J. Martone) |
| Defendant. | |

Defendant United Parcel Service, Inc. ("UPS") moves this Court for summary judgment on Plaintiff Charles W. Gribben's ("Gribben") disability discrimination claim. Assuming Gribben has a disability (a disputed fact, which is immaterial for purposes of this motion), he is not a qualified individual with a disability because he cannot perform the essential functions of his job with or without a reasonable accommodation.  The accommodations his doctor says are essential to his good health are both futile and unreasonable.

Gribben's doctor restricted Gribben from working in temperatures in excess of 90-degrees Fahrenheit for more than 20 minutes at a time.  As an ADA accommodation, Gribben proposes that UPS allow him to drive only air-conditioned vehicles during his shift and give him a 5 to 10 minute break every 20 minutes so that he can cool down.

UPS contends that these restrictions disqualify Gribben under the ADA because the accommodations he requires are (1) futile, since air conditioning would not lower the temperature to the 90-degree environment he needs; and (2) unreasonable, because they

1   would require UPS to eliminate one or more of the essential functions of Gribben's job

2   and/or substantially modify its operations.

3        This motion is supported by the following Memorandum of Points and Authorities,

4   the concurrently filed Statement of Facts, and the entire record herein.

5        **MEMORANDUM OF POINTS AND AUTHORITIES**

6   **I.    FACTUAL BACKGROUND**

7        Gribben began working for UPS in 1982.  (Defendant United Parcel Service's

8   Statement of Facts ["DSOF"] ¶ 1.)  Since 1998, Gribben has worked full-time as a shifter

9   driver.  (DSOF ¶ 1.)  Gribben's work shift typically runs from 1:00 p.m. until

10   approximately 9:30 or 10:00 p.m.  (DSOF ¶ 2.)  A shifter driver moves large, long-haul

11   tractor trailers from drop-off points to unloading points at UPS's distribution center.

12   (DSOF ¶ 3.)  These trailers are moved using specially-designed vehicles called "shifters,"

13   hence the job title "shifter driver."  (DSOF ¶ 3.)  Shifters are specifically designed for

14   local use, and cannot be used on the road as delivery vehicles.  (DSOF ¶ 3.)  Shifter

15   drivers perform multiple "shifts" each day, a process by which they couple a trailer to

16   their shifter, pull the trailer to a drop-off point, uncouple the trailer, get back in their

17   vehicle and repeat the process.  (DSOF ¶ 4.)  Based upon UPS production standards,

18   shifter drivers perform approximately one shift every five minutes, or 20 shifts per hour.

19   (DSOF ¶ 4.)

20        When the demand for shifter vehicles exceeds the number of shifters available,

21   over the road tractors called "browns" can also be used to pull trailers around UPS's

22   distribution center.  (DSOF ¶ 5.)  Browns, however, are not designed to perform shifts,

23   and therefore they are less effective at shifting trailers and require the driver to spend

24   approximately two to four minutes more time on each shift than the driver would if he

25   were using a shifter.  (DSOF ¶ 5.)  Whereas shifters have an air or hydraulic-operated fifth

26   wheel that automatically raises and lowers trailers at the touch of a button, browns require

27   the driver to manually perform that task, which adds an extra two to four minutes to each

28   shift.  (DSOF ¶ 6.)  Importantly, during the time period in question, most browns had air

1    conditioning, while the more utilitarian shifters did not.  (DSOF ¶ 6.)

2            In the summer of 2000, Gribben suffered heart failure and was diagnosed with

3    dilated cardiomyopathy and paroxysmal arterial fibrillation.  (DSOF ¶ 7.)  Since then,

4    Gribben has complained that his condition prevents him from working in an environment

5    of extreme heat.[1]  (DSOF ¶ 8.)  According to Gribben's physician, Karl Moon, M.D.,

6    Gribben cannot work in temperatures greater than 90 degrees Fahrenheit for more than 20

7    minutes at a time.  (DSOF ¶ 9.)  Additionally, Dr. Moon's restrictions demand that

8    Gribben be exposed to air conditioning for 5 to 10 minutes for every 20 minutes he spends

9    in the heat.  Otherwise, the air conditioning will not have its desired effect.  (DSOF ¶ 9.)

10   As explained below, there is no "reasonable accommodation" that would allow UPS to

11   comply with these restrictions.  *See* Section II.B., *infra*.

12           As a shifter driver, Gribben is required to work outdoors in temperatures that

13   sometimes exceed 110° Fahrenheit for periods longer than 20 minutes.  (DSOF ¶ 10.)  The

14   essential functions of a shifter driver require that employees work outdoors in an

15   environment with variable temperatures and humidity, and tolerate exposure to outside

16   inclement weather, including extreme heat.  (DSOF ¶ 11.)  Shifter drivers often perform

17   their job functions during the hottest times of the day.  According to an independent

18   industrial analyst, Dr. Peter Vasquez, even in those trucks that have air conditioning, the

19   temperature inside does not drop below 90 degrees (Gribben's maximum heat exposure

20   level) until after 11:00 p.m. during the summer months.  (DSOF ¶ 13.)  This is likely

21   attributable to the constant opening of the door to get in and out of the vehicle and other

22   factors preventing cold air from being sealed in the cab.  Furthermore, shifter drivers

---

[1]      Whether Gribben's heart condition is aggravated by heat is a disputed fact, which
is immaterial for purposes of this Motion.  On July 31, 2002, Dr. Peter Vasquez examined
Gribben and determined that there was "no objective evidence that [Gribben's] heart
condition decompensates under the physiologic demands of the heat."  (DSOF ¶ 21.)
Then on April 21, 2003, Dr. N. S. Prakash determined that Gribben's condition was not
exacerbated by high ambient temperatures and his condition would not restrict Gribben
from engaging in the physical activity that is required of a shifter driver.  (DSOF ¶ 22.)
However, the Court need not decide this issue to resolve this case.

1   spend more than one-half of their workday outside of their vehicles.  (DSOF ¶ 14.)  Due

2   to the frequent coupling and uncoupling of trailers that shifter drivers must do, they may

3   spend fewer than five minutes inside their trucks during each "shift."  (DSOF ¶ 14.)

4   Thus, an air conditioned truck, though more comfortable, is a futile accommodation

5   because it does not allow Gribben to work within the restrictions set forth by his

6   physician.

7        Even assuming Gribben could perform the essential functions of his job with the

8   accommodation he requests, UPS cannot guarantee Gribben an air-conditioned truck

9   every day.  (DSOF ¶ 15.)  UPS assigns vehicles to its shifter drivers based upon

10  availability.  (DSOF ¶ 15.)  One attribute of UPS's continued success as a global shipping

11  enterprise is its ability to efficiently manage its transportation fleet.  (DSOF ¶ 16.)  At his

12  request, Gribben was often assigned to an air-conditioned brown vehicle but, due to

13  business demands, an air-conditioned brown is not always available.  (DSOF ¶ 15.)  One

14  of UPS's fundamental business policies is that it reserves the right to assign any truck to

15  any employee based upon business needs and equipment demands.  (DSOF ¶ 16.)  UPS

16  cannot and does not <u>guarantee</u> any employee the same vehicle every day.  (DSOF ¶ 15.)

17  It would be impossible to make such a guarantee.  (DSOF ¶ 16.)

18       There are several factors that impact the availability of equipment, and which

19  would therefore preclude UPS from guaranteeing the same vehicle to the same person day

20  in and day out.  (DSOF ¶ 17.)  First, vehicles break down and they need maintenance and

21  repairs.  (DSOF ¶ 17.)  Second, the fluctuating demands of its business may require

22  certain vehicles to be used for other purposes.  (DSOF ¶ 18.)  An air-conditioned brown

23  that could be used as a shifter may be out on the road transporting trailers, or it may be in

24  use for employee training purposes, as it was on the day in 2004 when Gribben refused to

25  work because there was no air-conditioned truck available to him.  (DSOF ¶ 18.)  Third,

26  shifters and browns are frequently repositioned between UPS hubs regionally based upon

27  business demands.  (DSOF ¶ 19.)  A brown being used at UPS's Phoenix facility one week

28  might be sent to California the next week due to an equipment shortage, increased

1   volume, mechanical function, EPA emissions standards, or a number of other business

2   reasons.  (DSOF ¶ 19.)  That brown might be replaced with a shifter not equipped with air

3   conditioning, or it might not be replaced at all.  (DSOF ¶ 19.)

4       Even if UPS could guarantee Gribben an air-conditioned truck, Gribben's request

5   for frequent air-conditioned breaks as an accommodation is unreasonable because it

6   would require UPS to eliminate one or more essential functions of his job.  If Gribben

7   were given a 5 to 10 minute break every 20 minutes, UPS would need to hire a helper, or

8   reassign another employee to cover the shifts each hour that Gribben could not perform

9   while he was out on break.  (DSOF ¶ 20.)  An employer is not required to hire a helper, or

10   to transfer an employee's duties to his co-workers as a reasonable accommodation.  In that

11   regard, Gribben's requested accommodation is patently unreasonable.

12   **II.    GRIBBEN'S DISABILITY DISCRIMINATION CLAIM FAILS**

13       To state a prima facie claim of disability discrimination under the ADA, Gribben

14   must demonstrate, among other things, that he is a <u>qualified</u> individual with a disability,

15   meaning that he can perform the essential functions of his job with or without reasonable

16   accommodation.  *See*  42 U.S.C. § 12111(8); *Toyota Motor Manufacturing, Kentucky, Inc.*

17   *v. Williams*, 534 U.S. 184, 193 (2002).

18       **A.    Gribben is not a "qualified" individual with a disability.**

19       The key issue in this Motion is whether Gribben can perform the essential

20   functions of his job with or without his requested accommodation.  He must be able to

21   perform the essential functions to demonstrate that he is qualified individual with a

22   disability entitled to the anti-discrimination protections of the ADA.  *See* 42 U.S.C. §§

23   12111(8) and 12112(a);  *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104,

24   1108 (9th Cir. 2000).  The uncontroverted facts prove that Gribben cannot perform the

25   essential functions of his job with or without a reasonable accommodation, and

26   accordingly, his claim fails.

27       As noted, Gribben's physician imposed specific heat and time restrictions on his

28   ability to work.  Gribben argues that UPS should accommodate these restrictions by

1   guaranteeing him an air conditioned truck and allowing him break periods to cool off.  But

2   even if Gribben were provided these accommodations, the undisputed evidence

3   demonstrates that the summer temperatures in his truck would not drop down to the level

4   required by his doctor.  Thus, Gribben's requested accommodation is futile because it

5   would leave Gribben unable to perform the essential functions of his job while following

6   his doctor's orders.

7           It is well established law that, where the accommodation requested by an employee

8   would be futile, the employer is not required to provide the accommodation.  *See Hanson*

9   *v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 226, 87 Cal.Rptr.2d 487, 494 (Cal.App. 2 Dist.

10  1999) (employer not required to provide accommodation that would be futile); *Charles v.*

11  *Nike, Inc*, 255 Fed.Appx. 127, 129 (9th Cir. 2007) (same holding under the FEHA); *Perez*

12  *v. Linear Tech. Corp.*, 4 Fed.Appx. 527 (9th Cir. 2001) (unpublished).[2]

13          Similarly, if an employee's physician imposes restrictions that prohibit the

14  employee from performing the essential functions of his job, that employee is not a

15  qualified individual with a disability.  *See* 42 U.S.C. § 12111(8).  In *Timmons v. United*

16  *Parcel Service, Inc.*, No. 2:05-CV-02175-MCE-EFB, 2007 WL 2288320 (E.D. Cal.

17  August 8, 2007) (unreported), the plaintiff was a UPS package car driver who delivered

18  packages to businesses and residences.  The essential functions of the job required

19  Timmons to be able to lift packages up to 70 pounds above shoulder level.  *Id*. at *4.

20  Timmons suffered injuries to his knee and shoulder, and his doctor restricted him from

21  lifting more than 10 pounds and from performing overhead work.  *Id*. at *2.  The court

22  ruled that because Timmons was unable to perform an essential function of his job, he was

23  not a qualified individual with a disability under the ADA, and his disability

24  _____

25  [2] As a note on unpublished decisions, any unpublished decision issued on or after January
    1, 2007 may be cited to courts of the Ninth Circuit pursuant to F.R.A.P. 36-3.  As a
26  supplement to published decisions from other circuits, UPS has cited certain unpublished
    Ninth Circuit decisions that predate January 1, 2007 to demonstrate that the Ninth Circuit
27  is in agreement on the specific point of law noted, and in these instances no contrary
    Ninth Circuit authority was found.
28

1    discrimination claim was dismissed.  *Id*. at *5.

2        A similar decision should be rendered here. Gribben cannot perform the essential

3    functions of his job even <u>with</u> his requested accommodation.  Based upon Dr. Vasquez's

4    uncontroverted findings, even if Gribben were permanently assigned to an air-conditioned

5    truck, the temperatures inside the cab would remain in excess of the 90-degree restriction

6    imposed by his physician.  Gribben is not a qualified individual with a disability, and

7    therefore his disability discrimination claim must be dismissed.  *See Bates v. United*

8    *Parcel Service, Inc.*, 511 F.3d 974, 989 (9th Cir. 2007) ("If a disabled person cannot

9    perform a job's 'essential functions' (even with a reasonable accommodation), then the

10   ADA's employment protections do not apply") (citation omitted); *Weyer*, 198 F.3d at 1108

11   (same); *See also Patton v. Dobson Ass'n*, 113 F.3d 1242, 1997 WL 218587, *1

12   (unpublished) (affirming dismissal of disability discrimination claim because "there is no

13   evidence that [plaintiff] could fulfill his job responsibilities even if he were allowed

14   frequent rest stops and periodic leaves of absence.")

15   **B.     Gribben's suggested accommodations are unreasonable.**

16       Gribben has the burden of proving that a <u>reasonable</u> accommodation exists, which

17   would allow him to perform the essential functions of his job.  *Dark v. Curry County*

18   451 F.3d 1078, 1088 (9th Cir. 2006).  Even if an air-conditioned truck could reduce

19   Gribben's heat exposure to the level required by his physician, Gribben's requested

20   accommodations are unreasonable.  Gribben's physician ordered two work restrictions: (1)

21   permanent assignment to an air-conditioned truck; and (2) 5-10 minute breaks for every

22   20 minutes spent in the heat.  Because these accommodations would require UPS to

23   eliminate one or more essential functions of Gribben's position and substantially modify

24   its operations, neither accommodation is reasonable as a matter of law.

25   **1.     UPS cannot guarantee Gribben permanent use of an air-conditioned truck.**

26

27       UPS cannot guarantee Gribben an air-conditioned truck.  For the reasons described

28   above, UPS assigns vehicles to its shifter drivers based upon business needs and

1  equipment availability.  *See* Section I, *supra*.  In order to guarantee Gribben an air-
2  conditioned truck, UPS would have to change this fundamental business practice.

3       UPS  reserves the right to assign any truck to any employee based upon the needs
4  and equipment demands of the business on any given day.  UPS cannot and does not to
5  <u>guarantee</u> any employee the same vehicle every day.  It would be impossible to make such
6  a guarantee.  As explained in detail above, there are several factors that impact the
7  availability of equipment, and which would therefore preclude UPS from guaranteeing the
8  same vehicle to the same person day in and day out, such as vehicle maintenance and
9  repairs, fluctuating business demands, and the repositioning of equipment regionally
10  between UPS hubs.  For example, when Gribben refused to work in 2004 because there
11  was no air-conditioned truck available for him to use, UPS had assigned several trucks to
12  be used for employee training.

13       It is well-established that an employer is not required to fundamentally alter the
14  nature of its operations in order to accommodate an employee's disability.  *See Patton*,
15  1997 WL 218587, at *1 ("an employer is not required to hire additional employees <u>or</u>
16  <u>make fundamental modifications in its operations</u>") (emphasis added); *Milton v. Scrivner,*
17  *Inc.*, 53 F.3d 1118, 1125 (10th Cir. 1995); *see also Estate of Mauro v. Borgess Medical*
18  *Center*, 137 F.3d 398, 401 (6th Cir. 1998) (affirming that job restructuring is not required
19  as accommodation).

20       In *Patton*, the Ninth Circuit held that the employer did not have to fundamentally
21  change its operations by creating a supervisory position for one of its maintenance
22  employees whose health prevented him from working outside or from performing
23  physically strenuous job duties.  *Patton*, 1997 WL 218587, at *1.  Similarly, in *Milton*, the
24  Tenth Circuit held that the employer did not have to slow its production schedule as a
25  reasonable accommodation for the plaintiffs because that would "fundamentally alter the
26  nature of the defendant's warehouse operation, a change not demanded by the law."
27  *Milton*, 53 F.3d at 1125.  Here, in order to guarantee that an air-conditioned truck was
28  available for Gribben every day, UPS would be required to fundamentally restructure the

way it manages and assigns its equipment.  Gribben's proposed accommodation exceeds the scope of UPS's obligations under the ADA, and it is therefore unreasonable.

### 2. Gribben's proposed accommodation would require UPS to eliminate one or more of the essential functions of his job.

In addition to a guarantee of an air-conditioned truck, Gribben needs 5-10 minute breaks for every 20 minutes he spends in the heat.  Similar to his request for the air-conditioned truck, Gribben's request for frequent cooling breaks is unreasonable because it would require UPS to eliminate one or more essential functions of his job.  *Dark v. Curry County,* 451 F.3d 1078, 1089 (9th Cir. 2006) (unreported) ("The ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees"); *McGregor v. National Railroad Passenger Corp.*, 185 F.3d 868, 1999 WL 401662, *1 (9th Cir. 1999) (unpublished) (employer is not required to eliminate or reassign essential job functions as a reasonable accommodation); *American Federation of Government Employees Council 33, Local 51 v. Bentsen*, 35 F.3d 570, 1994 WL 481919, *2 (9th Cir. 1994) (employer not required to accommodate employee by eliminating essential job function); *see also* 42 U.S.C. § 12111 (8) (defining "qualified individual" as someone who can perform the essential functions of the job); 45 C.F.R. § 84.12 (defining the term "reasonable accommodation").

Gribben's physician, Karl Moon, M.D., stated that for the air-conditioning in a truck to have its desired effect upon Gribben, he would have to be exposed to air conditioning for 5 to 10 minutes for every 20 minutes he spends in the heat.  (DSOF ¶ 9.) UPS's production standards for shifter drivers require drivers to constantly get out of their vehicles to couple and uncouple trailers and to perform 20 shifts per hour. (DSOF ¶ 4.) Under his proposed accommodation, Gribben would be on break for 10 to 20 minutes each hour, and would therefore be unavailable to perform 4 to 8 shifts each hour. To keep pace with the influx of trailers needing to be shifted, UPS would need to hire a helper, or reassign another employee to cover the 4 to 8 shifts each hour that Gribben could not perform while he was out on break.

1    The law is clear that an employer is not required to hire a helper or transfer an

2    employee's duties to his co-workers as a reasonable accommodation.  *Cochrum v. Old Ben*

3    *Coal Co.*, 102 F.3d 908, 912 (7th Cir. 1996) ("[H]iring a helper to perform the overhead

4    work would mean the helper would de facto perform Cochrum's job.  We cannot agree

5    that Cochrum would be performing the essential functions of his job with a helper."); *see*

6    *also Cota v. Cyprus Amax Minerals Co.*, 72 Fed.Appx. 538, 539 (9th Cir. 2003)

7    (accommodation where employee's co-workers perform the essential job functions that he

8    cannot is unreasonable and not required); *Dark,* 451 F.3d at 1089; *Hansen v. Henderson,*

9    233 F.3d 521, 523-24 (7th Cir. 2000) (stating that an employer need not create a new job

10   or provide a helper as an accommodation to a disabled employee); *Sieberns v. Wal-Mart*

11   *Stores, Inc.,* 125 F.3d 1019, 1022 (7th Cir. 1997) ("to accommodate him [the employer]

12   would have to hire someone else to help perform some duties. That clearly was beyond a

13   reasonable accommodation."); *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir. 1991)

14   (assigning other postal employees to do the plaintiff's heavy work not a reasonable

15   accommodation).  It follows that Gribben would not be performing the essential functions

16   of his job if a co-worker was required to cover 4-8 of his shifts every hour, every day.

17   Accordingly, Gribben's proposed accommodation of 5-10 minute breaks for every 20

18   minutes spent in the heat is unreasonable.

19   The same is true if UPS were to permanently assign Gribben an air-conditioned

20   brown vehicle.  Because browns are not designed to shift trailers, they are much less

21   efficient at coupling and uncoupling, and drivers are required to spend approximately 2-4

22   more minutes per shift than if they were using a shifter.  Permanently assigning Gribben a

23   brown truck would further reduce the number of shifts per hour that Gribben could

24   perform, and would require further assistance from another worker to cover the shifts that

25   Gribben was not performing (in addition to those he was not performing due to his

26   frequent breaks).  Again, Gribben would not be performing the essential functions of his

27   job if his co-workers were performing his duties for him.  Accordingly, Gribben's

28   proposed accommodations of permanent assignment to an air-conditioned brown vehicle

1  and 5-10 minute breaks every 20 minutes are unreasonable, and his disability

2  discrimination claim fails.

3  **III.    <u>CONCLUSION</u>**

4          Gribben has failed to raise a genuine issue of material fact with respect to his

5  disability discrimination claim because he cannot show that he is a qualified individual

6  with a disability.  Furthermore, even if Gribben could perform the essential functions of

7  his job with an air-conditioned truck (despite the independent medical evidence to the

8  contrary), Gribben's proposed accommodation is unreasonable because it would require

9  UPS to eliminate one or more essential functions of the job and/or fundamentally alter its

10 operations.  Accordingly, Gribben's disability discrimination claim necessarily fails.  UPS

11 respectfully requests that this Court summarily dismiss Gribben's disability discrimination

12 claim for the reasons set forth above.

13         RESPECTFULLY SUBMITTED this 14th day of November, 2008.

14                                          QUARLES & BRADY LLP
                                            Renaissance One
15                                          Two North Central Avenue
                                            Phoenix, AZ  85004-2391
16
                                            By  s/ Benjamin J. Naylor
17                                              David T. Barton
                                                Carrie M. Francis
18                                              Benjamin J. Naylor
                                            Attorneys for Defendant
19

20

21

22

23

24

25

26

27

28  . . . . . . .

1

2

3

4

5

I hereby certify that on the 14th day of November, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

6

7

8

9

10

Susan Martin
Daniel L. Bonnett
Jennifer Kroll
MARTIN & BONNETT
3300 N. Central, Suite 1720
Phoenix, AZ 85012-2517
Attorneys for Plaintiff

11

s/Ginger L. Chilcote

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28