**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Charles W. Gribben, | ) | No. CV-04-2814-PHX-FJM |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| United Parcel Service, Inc., | ) | |
| Defendant. | ) | |

Plaintiff Charles Gribben filed an action against his employer, United Parcel Service ("UPS"), alleging disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112. We granted UPS's motion for summary judgment on Gribben's discrimination claim and a jury returned a verdict in favor of UPS on the retaliation claim. The United States Court of Appeals for the Ninth Circuit reversed our decision on the discrimination claim, concluding that there is a genuine issue of material fact as to whether Gribben's impairment constitutes a disability under the ADA. The court remanded the discrimination claim for further proceedings. We now have before us UPS's second motion for summary judgment (doc. 171), Gribben's response (doc. 175), and UPS's reply (doc. 180).

The ADA prohibits discrimination against a qualified individual with a disability with respect to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a). A

1  "qualified individual" is a person with a disability who "with or without reasonable
2  accommodation, can perform the essential functions of the employment position that such
3  individual holds or desires." Id. ¶ 12111(8). "Essential functions" are defined as "the
4  fundamental job duties of the employment position . . . not includ[ing] the marginal functions
5  of the position." 29 C.F.R. § 1630.2(n)(1).

6         Beginning in 1998, Gribben was employed by UPS as a shifter driver, responsible for
7  transferring trailers within UPS's distribution center. Shifter drivers can drive two kinds of
8  vehicles—a "shifter," which has an air or hydraulic-operated fifth wheel that automatically
9  raises and lowers trailers, or a "brown," which requires a driver to manually perform the task.
10  In June 2002, Dr. Karl Moon diagnosed Gribben as having congestive heart failure and
11  cardiomyopathy. Dr. Moon determined that Gribben's physical impairment prevented him
12  from working in temperatures greater than 90 degrees Fahrenheit for continuous periods of
13  time in excess of 20 minutes unless he was afforded the opportunity to cool down.

14                                   **I. Qualified Individual**

15         UPS now argues that, even assuming Gribben has a "disability" as defined by the
16  ADA, his discrimination claim must fail because he cannot perform the essential functions
17  of his job, with or without reasonable accommodation, and therefore he is not a "qualified
18  individual" as defined by the ADA. The essential job functions of a shifter driver include
19  the ability to (1) work in an environment with variable temperatures and humidity, and (2)
20  tolerate exposure to outside inclement weather. DSOF, exhibit 6. UPS argues that because
21  Gribben's job requires him to work outside, his medical restrictions prevent him from
22  performing the essential functions of his job. However, according to Dr. Moon's assessment,
23  Gribben is not prevented from working outside. He can tolerate heat, but not for continuous
24  periods in excess of 20 minutes. Gribben argues that if he is allowed to use an air
25  conditioned vehicle, he is able to perform the essential functions of his job.

26         UPS contends that even if Gribben were guaranteed the use of an air conditioned
27  vehicle, Dr. Moon's restrictions would not be satisfied because the temperature inside the air
28  conditioned cab remains in excess of 90 degrees. UPS relies on the report of industrial

1  analyst, Dr. Peter Vasquez, who, based on his observations on July 31, 2002, concluded that
2  the temperature inside the tested air conditioned vehicle did not drop below 90 degrees until
3  after 11:00 p.m.  DSOF, exhibit 5.

4      Gribben refutes this evidence with a declaration by co-worker, Randy Pedeferri, that
5  on July 31, 2002, UPS asked him to test the temperature inside his vehicle.  Pedeferri attested
6  that not only was his vehicle's air conditioning not functioning properly, but, as was his
7  customary practice, he drove with his window completely rolled down throughout the day.
8  Pedeferri Depo. ¶ 4.  According to Gribben, both of these factors caused the temperatures
9  readings inside the vehicle to register significantly higher than usual.  This is an issue of fact
10 for trial.

11     UPS also argues that Gribben's requested accommodation of an air conditioned
12 vehicle would be futile because a shifter driver is required to work outside the air conditioned
13 vehicle for a significant portion of the day.[1]  An issue of fact exists as to how much time a
14 shifter driver is required to work outside his vehicle.  While UPS asserts that shifter drivers
15 spend less than half their time inside the vehicle, DSOF, ¶ 14, Gribben presents evidence that
16 shifter drivers spend as little as 15% of the day outside their vehicles.  Second PSOF, exhibit
17 A at 16.

18     Because issues of fact exist as to whether Gribben's requested accommodation would
19 enable him to perform the essential functions of his job, thereby rendering him a "qualified
20 individual" under the ADA, we deny UPS's motion for summary judgment on this basis.

21                    **II. Reasonable Accommodation**

22     UPS also argues that Gribben is not entitled to ADA protection because his requested
23 accommodations are unreasonable.  It claims that Gribben's physician ordered two work
24 restrictions:  (1) permanent assignment to an air conditioned truck, and (2) 5 to 10 minute
25

26      [1]Although UPS characterizes Dr. Vasquez's report as providing that, as a shifter
27 driver, Gribben is required to work outdoors in excessive heat "for periods longer than 20
   minutes," Motion at 3, DSOF ¶ 10, Dr. Vasquez's report provides only that shifter drivers
28 "spent less than 1/2 of their time inside the cab of the vehicle."  DSOF, exhibit 5.

breaks for every 20 minutes spent in the heat.   UPS contends that because these accommodations would require it to eliminate one or more essential functions of Gribben's position and substantially modify its operation, neither accommodation is reasonable as a matter of law.

Under the ADA, "reasonable accommodations" are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position.' " 29 C.F. R. § 1630.2(o)(1)(ii). UPS asserts that it assigns vehicles to its shifter drivers based on business needs and equipment availability, and that it cannot guarantee Gribben an air conditioned truck every day. DSOF ¶¶ 17-19. It claims that in order to guarantee Gribben an air conditioned truck, it would have to change its fundamental business practices, presumably causing an undue hardship. See 29 C.F.R. § 1630.2(p).

Gribben, on the other hand, contends that his request for accommodation does not require UPS to alter its business practice. First, he argues that UPS has written policies and procedures which provide that whenever possible it will assign the same equipment to the same employee. PSOF, Add'l SOF ¶ 9; Second PSOF ¶ 25; see also Bartholomew Depo., Second PSOF, exhibit B at 86 (testifying that UPS assigns the same equipment to each employee every day wherever possible).   Moreover, Gribben claims that UPS has periodically assigned him an air conditioned vehicle for lengthy periods of time without issue.  For example, from June 2003 through March 31, 2004, and again from August to September 2005, UPS provided Gribben with an air conditioned vehicle. PSOF, Add'l SOF ¶ 15; Second PSOF ¶ 24.  At a minimum, an issue of fact exists as to whether assigning Gribben an air conditioned vehicle would constitute a change in UPS's fundamental business practices so as to make the requested accommodation unreasonable.

Finally, UPS asserts that Dr. Moon required that Gribben receive a 5 to 10 minute break for every 20 minutes that he spends in the heat, and that the production standards for its shifter drivers do not allow for such breaks.  It claims that this accommodation would

reduce the number of shifts that Gribben could perform, forcing UPS to hire a "helper" in order to keep pace with the influx of trailers needing to be shifted. <u>Motion</u> at 9. It claims the law is clear that an employer is not required to hire a helper or transfer an employee's duties to his co-workers as a reasonable accommodation.

Gribben responds that he has never requested an accommodation in the nature of a break every 20 minutes, and that UPS's argument mischaracterizes Dr. Moon's testimony. Dr. Moon testified that Gribben should not be exposed to heat in excess of 90 degrees for more than 20 minutes at a time. <u>Moon Depo.</u> at 41. In response to a question by UPS's lawyer, Dr. Moon stated that it would take approximately 5 to 10 minutes in air conditioning for Gribben to recover from the heat exposure. <u>Id.</u> at 42. UPS now argues that Dr. Moon's restrictions include both an air conditioned truck <u>and</u> a 5 to 10 minute break every 20 minutes. We do not read the testimony that way. Rather, Dr. Moon required Gribben to avoid prolonged exposure to temperatures in excess of 90 degrees. Gribben seeks to satisfy this restriction by driving an air conditioned vehicle—not by taking a break every 20 minutes. An issue of fact remains as to whether driving an air conditioned vehicle will effectively accommodate Gribben's medical condition.

### III. Conclusion

Based on the foregoing, we conclude that issues of fact exist as to whether Gribben is a "qualified individual" under the ADA and whether the accommodation requested by Gribben is reasonable.

**IT IS ORDERED DENYING** UPS's second motion for summary judgment (doc. 171).

DATED this 12th day of March, 2009.

_Frederick J. Martone_
Frederick J. Martone
United States District Judge

- 5 -